UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  v.  DEF#1) Luis ESQUIVEL,  DEF#2) Panfilo Jim ESQUIVEL,  DEF#3) Juan Carlos SOTO-Mariscales,  Defendant(s) | Magistrate Case No.  '08 MJ 1042  COMPLAINT FOR VIOLATION OF:  Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)  Transportation of Illegal Aliens |

The undersigned complainant, being duly sworn, states:

On or about **April 3, 2008,** within the Southern District of California, defendant **Luis ESQUIVEL, Panfilo Jim ESQUIVEL, and Juan Carlos SOTO-Mariscales** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Leonel ARMAS-Farias, Juan MIRAMONTES-Duarte,** and **Abel MENDIOLA-Ramirez** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 4th DAY OF **APRIL 2008**

Anthony J. Battaglia
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
DEF#1) Luis ESQUIVEL,
DEF#2) Panfilo Jim ESQUIVEL,
DEF#3) Juan Carlos SOTO-Mariscales,

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Leonel ARMAS-Farias, Juan MIRAMONTES-Duarte,** and **Abel MENDIOLA-Ramirez** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On Thursday, April 3, 2008, at approximately 6:15 a.m., Border Patrol Agent Blanchard, while traveling eastbound on Interstate 8 on the Pine Valley Creek Bridge, observed a white Ford Windstar from across the median traveling westbound over the same bridge. The Windstar's rear bumper appeared to be extremely low to the ground, coming inches from the pavement as the Windstar passed over bumps in the Interstate; it was readily apparent that the Windstar was bearing a heavy load. Given the inclement weather and poor road conditions on the morning of April 3, 2008, the Interstate 8 and Old Highway 80 Border Patrol Checkpoints were temporarily closed. During such conditions, illegal alien smuggling traffic dramatically increases.

Agent Blanchard alerted the East County Abatement Team to a possible load vehicle traveling westbound from the Pine Valley Creek Bridge on Interstate 8. Border Patrol Agent Remenar, assigned to the East County Abatement Team, resumed surveillance on the white Ford Windstar as it traveled westbound on the Interstate past the Highway 79 Exit. At the time, Agent Remenar was driving a marked agency sedan, complete with a full set of lights and sirens. While performing surveillance of the Windstar, Agent Remenar concurred with Agent Blanchard's observations of the vehicle being heavily loaded. Agent Remenar was able to garner a view of the Windstar's license plate and requested a stolen vehicle and registered owner information check through Border Patrol Radio Dispatch. The vehicle registration was out of Chula Vista, California. Border Patrol Agent Cuevas, also assigned to the East County Abatement Team passed the Windstar on the Interstate in an attempt to view the occupants of the vehicle. Agent Cuevas observed two Hispanic male occupants (a male driver and a male passenger), neither of which seemed to be consistent with the registered owner of the vehicle.

At approximately 6:45 a.m., Agent Remenar attempted a vehicle stop on the Windstar approximately one mile east of the Tavern Road Exit in Alpine, California. The driver of the Windstar continued to travel westbound on Interstate 8, failing to yield to the lights and sirens of Agent Remenar's assigned marked Agency sedan. The Windstar continued westbound and exited at Tavern Road, where it continued through a red light and illegally merged into the flow of traffic northbound on Tavern Road. At 6:48 a.m. the Windstar finally came to a stop northbound on Tavern Road approximately one quarter of a mile north of the Tavern Road Exit off ramp. Agent Remenar and the other agents from the East County Abatement Team approached the Windstar and immediately identified themselves as United States Border Patrol Agents. Agent Remenar observed seven individuals lying down in the back seats of the Windstar in addition to the driver and passenger. Agent Remenar immediately removed the driver from the vehicle, as the East County Abatement Team questioned the occupants of the Windstar as to their citizenships. The driver later identified as defendant **Luis ESQUIVEL** and the passenger later identified as defendant **Panfilo ESQUIVEL**, claimed to be United States citizens. However, the seven individuals hiding in the back of the Windstar freely admitted to be citizens and nationals of Mexico. Furthermore, all seven aliens in the Windstar claimed to not be in possession of valid immigration documentation that would enable them to enter or remain in the United States legally. All individuals were arrested and transported to the El Cajon Border Patrol Station located in El Cajon, California for processing.

CONTINUATION OF COMPLAINT:
DEF#1) Luis ESQUIVEL,
DEF#2) Panfilo Jim ESQUIVEL,
DEF#3) Juan Carlos SOTO-Mariscales,

## DEFENDANTS STATEMENTS (Luis ESQUIVEL):

On April 3, 2008, at approximately 8:56 a.m., Border Patrol Agent Rivera advised **Luis ESQUIVEL** of his Miranda rights in the English language. The defendant stated that he understood his rights, and agreed to provide a statement without the presence or aid of an attorney.

The defendant stated that his true and complete name is **Luis ESQUIVEL Jr**. He was born in Templeton, California on August 24, 1979. He resides in Chula Vista, California. When questioned as to his citizenship, the defendant stated that he was a United States citizen.

When confronted with his criminal record, he confirmed that it is his and it is accurate. The defendant recounted an arrest for alien smuggling in 2004. The defendant stated that he was also arrested before at the Border Patrol Interstate 8 Checkpoint, near Pine Valley, California. On that occasion, he and his mother stopped to pick up approximately three illegal aliens from the side of the Interstate. The defendant also confirmed arrests for driving under the influence and a conviction for possession of a controlled substance for sale. He stated that he did have a half pound of methamphetamines but that it was not for sale. He stated he spent over six months in jail and three years on probation for the controlled substance offense.

He stated that the white Ford Windstar, which he was driving today, belongs to his mother. The defendant left his house in the Ford, with his brother, at approximately 8:00 p.m., on Wednesday, April 2nd, 2008. He and his brother traveled from Chula Vista, California to El Centro, California, to meet some women they met over the internet. The brothers met the women near Dogwood Road in El Centro, and had the women follow them in their own car to a nearby Best Western Hotel. He stated that at approximately 5:00 a.m., he left the hotel with his brother, and drove back on Interstate 8 towards San Diego, California. He saw what he presumed were illegal aliens walking across the road, near a freeway call box, just past the exit for the Golden Acorn Casino. He stopped and offered them a ride. He didn't know where he was going to take them or what he was going to do with them, because he hadn't planned on picking anyone up. When asked why he would stop and pick up illegal aliens, knowing from previous arrests that it is a felony, he stated "that's a good point." The defendant stated that when he originally saw the Border Patrol unit attempting to pull him over, he thought it was a California Highway Patrol unit. He did not pull over right away because he was scared. He was embarrassed to be arrested in front of passing motorists, so he went off the freeway before stopping. He stated that the van was riding so low, that it was obvious that it was loaded with people. He stated that when he was younger, both he and his brother engaged in illegal activities to make money. He stated that on this occasion he was not doing it for money. The defendant was presented with a photographic lineup containing six photographs. He identified the subject in photograph number four as his brother, co-defendant **Panfilo ESQUIVEL**.

## DEFENDANTS STATEMENTS (Panfilo Jim ESQUIVEL):

At approximately 9:58 a.m., the defendant was advised of his Miranda Warnings in the English language and stated he understood and was willing to make a statement without an attorney present.

The defendant was born on March 6, 1982, in Templeton, California. He stated that he currently resides in Chula Vista, California. When questioned as to his citizenship, he stated that he was a United States citizen. He said that he last used drugs seven years ago, and that he last used alcohol one year ago. He further stated that he was not under the influence of any mind-altering substances during the interview.

CONTINUATION OF COMPLAINT:
DEF#1) Luis ESQUIVEL,
DEF#2) Panfilo Jim ESQUIVEL,
DEF#3) Juan Carlos SOTO-Mariscales,

The defendant was questioned as to his first arrest for alien smuggling, which he stated occurred eight years ago. He said that he approached a girl that he went to school with in order to make some money. He stated that she arranged for him to make money by transporting undocumented aliens. He said that he was directed to pick up a parked car in Mission Valley and take it to San Juan, California, just north of the San Clemente, California Border Patrol Checkpoint. He said that he was transporting four undocumented aliens, and that he was to receive $400.00 per alien. He said that he was aware that the four individuals contained in the vehicle were undocumented aliens and that transporting them was illegal. The defendant was presented with a photographic lineup containing six photographs. He identified the subject in photograph as his brother, co-defendant **Luis ESQUIVEL**.

## DEFENDANTS STATEMENTS (Juan Carlos SOTO-Mariscales):

At 11:29 a.m. the defendant was advised of his Miranda Warnings and he stated he understood these rights and was willing to make a statement without an attorney present.

**Juan Carlos SOTO-Mariscales** is a citizen and national of Mexico without the required documentation to legally enter or remain in the United States. **SOTO** claims to be nothing more than a member of the group of seven undocumented aliens who were apprehended attempting to further their illegal entry into the United States. **SOTO** also claims that he just wanted to enter into the United States to look for work and attempt to provide a better quality of life to his wife and three children back in Mexico.

According to **SOTO**, he crossed the U.S./Mexico International Border last night at approximately 11:30 p.m. along with two foot guides, and walked non-stop for about four hours before coming to a highway. He stated that the two foot guides abandoned the group by the highway before dawn because they had missed their ride and were afraid of being caught. He further stated that since they didn't know where they were or where to go, they began to hitchhike for a ride. He claims that the driver of the white van that he was arrested in offered to give him and the group a ride with no prospect of financial compensation.

When he was confronted with the likelihood of him being the foot guide that smuggled the group apprehended with him in the white van, he became confrontational and argumentative. **SOTO** insistently denied any sort of involvement with the smuggling event, in spite of his pattern of apprehensions that is consistent with that of an active foot guide. **SOTO** refrained from making any other statements and completed the remainder of the interview with short obviously evasive statements.

## MATERIAL WITNESSES STATEMENTS:

Material witnesses **Leonel ARMAS-Farias, Juan MIRAMONTES-Duarte, Abel MENDIOLA-Ramirez** agree that they are citizens and nationals of Mexico illegally present in the United States. They admit to entering the United States illegally with the help of a foot-guide. The material witnesses stated that they were to pay $1,300.00 to $2,500.00 to be smuggled into the United States. **Leonel ARMAS-Farias, Juan MIRAMONTES-Duarte, Abel MENDIOLA-Ramirez** were presented with a photographic lineup and identified photograph number five, **Juan Carlos SOTO-Mariscales** as the foot guide. **Abel MENDIOLA-Ramirez** identified photographs number three and number six as subjects who were already in the van when the van arrived to pick up the group. Photograph number three depicts defendant **Luis Esquivel**. Photograph number six depicts defendant **Panfilio Jim Esquivel**. **Leonel ARMAS-Farias** identified the defendant, **Panfilo Jim ESQUIVEL** as the driver of the van.